IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02403-RBJ-MJW

ERNIE J. SAVANNAH,

Plaintiff,

v.

ROBERT KNAB,

Defendant.

## REPORT & RECOMMENDATION ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 148)

**Michael J. Watanabe**
**United States Magistrate Judge**

After robbing a marijuana dispensary armed with a BB gun, Ernie Savannah found himself running from the police.  He was caught and arrested—and in the process, he was bitten four times, around his neck and head, by a police dog.  Mr. Savannah sues for excessive force under the Fourth Amendment; the only remaining defendant is Robert Knab, the officer who controlled the police dog.

Officer Knab has moved for summary judgment.  The Court concludes that there are genuine disputes of material fact requiring trial.  Specifically, a jury might find that Officer Knab acted objectively unreasonably by commanding the dog to attack—because Mr. Savannah was lying prostrate and was otherwise complying with another officer's orders.  The Court also concludes that a reasonable officer would have known, due to clearly established precedent, that such conduct violated Mr. Savannah's rights.  As a result, the Court recommends that Officer Knab's motion be denied.

2

The Court has reviewed the parties' filings (Docket Nos. 148, 156, 157, 158, & 161), taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law. Now being fully informed, the Court makes the following report and recommendation.

## Legal Standards

The motion was referred to the undersigned by District Judge R. Brooke Jackson. (Docket No. 164.) Judge Jackson has stated the applicable legal standards thusly:

> . . . Summary judgment may only be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. However, the assertion of a qualified immunity defense alters the standard analysis somewhat.
>
> After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff. The plaintiff must establish that (1) the defendant's actions violated a constitutional right, and (2) the constitutional right was clearly established. . . . Only when the plaintiff meets his initial burden does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Nevertheless, even though the plaintiff bears the burden of making this two-part showing, we construe the facts in the light most favorable to the plaintiff as the nonmoving party.

*Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1131 (D. Colo. 2014) (internal citations, quotation marks, and alterations omitted).

## Findings of Fact

The Court makes the following findings of fact for purposes of this motion only. These findings are (1) undisputed between the parties; (2) if disputed, resolved in Mr. Savannah's favor unless no reasonable jury could do so based on the record before the

3

Court; or (3) if inferred, drawn in Mr. Savannah's favor unless no reasonable jury could do so based on the record before the Court.

1. Shortly after 5:00 p.m. on August 21, 2011, Mr. Savannah and an accomplice robbed a medical-marijuana dispensary in Fort Collins, Colorado, each armed with a BB gun. (Docket No. 148-3 ¶6(a) & p.4; Docket No. 148-2, pp. 3–6; Docket No. 156-7 p.3.)

2. Mr. Savannah and his accomplice fled the scene in a car, and were pursued by police almost immediately. (Docket No. 148-2, pp.7–8; Docket No. 148-3 p.4.)

3. Mr. Savannah got out of the car near the intersection of College Avenue and Fossil Creek Parkway, wishing not to be involved in a car chase. (Docket No. 148-2, pp.9–11; Docket No. 148-3 p.4.)

4. Mr. Savannah ran across an open field toward a carpet store and the alley behind it. (Docket Nos. 156-1, 156-5; Docket No. 148-2, pp.12–20; Docket No. 157-10 ¶ 2; Docket No. 148-3 ¶6(b)-(d) & p.4.)

5. As Mr. Savannah neared the end of the field and approached the store and alley, Officer Bill Collins arrived in a patrol car. (Docket No. 148-2, p.21; Docket No. 157-10 ¶¶ 3–4.)

6. Officer Collins drew his firearm and ordered Mr. Savannah to the ground. (Docket No. 148-2, p.22; Docket No. 157-8, pp. 5–6; Docket No. 156-7 p.3.)

7. Mr. Savannah complied with Officer Collins's orders, lying prostrate, face-down, with his hands "palms down" and arms "stretched out." (Docket No. 148-2,

pp.23, 24, 25, 26; Docket No. 157-10 ¶¶ 6–7.  *But see* Docket No. 148-3 ¶ 6(f)-(g) & p.4 (affidavit of Officer Knab and police report stating that Mr. Savannah was not complying with orders nor laying face-down); Docket No. 157-9, pp.10–11 (deposition of Officer Knab stating that Mr. Savannah's hands were at his side and that he laid on his back, not stomach); Docket No. 156-7 pp.4–5 (deposition of Officer Collins stating that Mr. Savannah was not immediately responsive to commands and was on his back, rolling to his side with his hands along his sides).)

8.    Shortly thereafter, Officer Knab arrived on the scene.  (Docket No. 148-2, p.23; Docket No. 157-8, pp. 5–6; Docket No. 157-10 ¶ 7; Docket No. 148-3 ¶ 6(d) & p.4.)

9.    Officer Knab exited his patrol car and released the police dog, Zorro, from the car without leashing the dog or grabbing his collar.  (Docket No. 148-2, p.23; Docket No. 157-10 ¶¶ 8–9; Docket No. 148-3 ¶ 6(e) & p.4.)

10.   Officer Knab kept his eyes on the scene, *i.e.,* on Mr. Savannah, as he was exiting his vehicle.  (*See* Docket No. 157-9, p.10–11; Docket No. 148-3 p.4.)

11.   Zorro ran away from Officer Knab, in the general direction of Mr. Savannah, twice; both times, Officer Knab successfully re-called Zorro to his side with verbal commands.  (Docket No. 157-9, pp.12–13; Docket No. 148-3 p.4.)

12.   Officer Knab gave Zorro the verbal command to attack.  (Docket No. 148-3 ¶ 6(h) & p.4.  *But see* Docket No. 148-2, p.24 (deposition of Mr. Savannah stating that he did not hear any command); Docket No. 157-8, p.6 (same).)

5

13.     Zorro ran to Mr. Savannah, bit him twice on the back of the head or neck on one side, then jumped to the other side of Mr. Savannah's body and bit him twice on the back of the head or neck on that side.   (Docket No. 148-2, pp.25–28; Docket No. 157-8, pp. 7–8; Docket No. 157-10 ¶¶ 11–14; Docket No. 148-3 ¶ 6(h) & p.4.)

14.     Officer Knab then grabbed Zorro by the collar and gave him the verbal command to release.   (Docket No. 148-2, pp.27–28; Docket No. 157-8, p. 8; Docket No. 157-10 ¶ 15; Docket No. 148-3 ¶ 6(*i*) & p.4.)

15.     The officers then handcuffed Mr. Savannah and took him into custody. (Docket No. 157-10 ¶¶ 16–18.)   On the way to jail, they took him to Poudre Valley Hospital to have his wounds treated.   (Docket No. 157-10 ¶ 20; Docket No. 156-2; *see also* Docket No. 158-6.)

16.     Officer Knab was removed from the K-9 Unit at the Fort Collins Police Department as a result of this incident and previous incidents of failing to keep police dogs leashed (despite orders from his superiors to do so).   (Docket Nos. 156-3, 156-4.)

## Discussion

Officer Knab makes two arguments for summary judgment in his favor.   First, he argues that his conduct was objectively reasonable, on the foregoing facts.   Second, he argues that Mr. Savannah has not adduced any evidence that he suffered more-than-de minimis injuries.   The Court will take up the second argument first, as it's more easily discarded.

6

**I.**     <u>**De Minimis Injuries In Excessive Force Claims**</u>

Officer Knab cites *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007), for the proposition that "to recover on an excessive force claim, a plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional."  (Docket No. 148-1, p.13.)   Mr. Savannah has adduced very little evidence that the dog bites amounted to anything more than minor lacerations, and Officer Knab thus argues that Mr. Savannah has not met the second part of the *Cortez* test.

But Officer Knab misstates the holding of *Cortez*.  The requirement that a plaintiff show more than a de minimis injury applies only in the context of "unduly tight handcuffing," "to support an excessive force claim *if the use of handcuffs is otherwise justified*."   *Cortez*, 478 F.3d at 1129 (emphasis added).   Indeed, later in *Cortez*, a co-plaintiff's excessive-force claim went forward despite the lack of any physical injury, due to the harms to her "personal security and individual dignity."   *Id.* at 1130–32.

Since *Cortez*, the Tenth Circuit has arguably expanded the rule requiring a showing of more-than-de minimis injury—but not very far.   In *Fisher v. City of Las Cruces*, the panel majority felt compelled to apply this rule to all excessive-force claims arising out of the manner or course of handcuffing, rather than only those involving overly-tight handcuffs.   584 F.3d 888, 897–99 (10th Cir. 2009).   A concurring judge felt that the majority went too far, finding the requirement of more-than-de minimis injury to be

7

both inconsistent with Supreme Court precedent and unnecessary outside the context of tight handcuffs. *Id.* at 902–04 (Gorsuch, J., concurring). As the exceedingly narrow dispute in *Fisher* shows, the *Cortez* rule does not extend far—and it certainly does not extend to this case, which involves no injury related to handcuffs. *See, e.g.*, *Grass v. Johnson*, 322 F. App'x 586, 590 (10th Cir. 2009) (rejecting application of *Cortez* rule where officer allegedly punched suspect in backseat of patrol car, giving him a black eye).

## II. <u>Excessive Force Via Commanding Zorro To Attack</u>

Turning to the standards that actually do apply, Officer Knab has raised a qualified immunity defense. As stated by Judge Jackson:

> Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. Qualified immunity protects state actors from liability as well as suit but only if their conduct does not violate clearly established constitutional rights of which a reasonable person should have known. This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. Overall, qualified immunity "operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful.

*Shimomura*, 17 F. Supp. 3d at 1131–32 (internal citations and quotation marks omitted).

### A. Constitutional Violation

The Fourth Amendment protects individuals from unreasonable seizures, and courts have long recognized that the reasonableness of a seizure depends not just on why or when it is made, but also on how it is accomplished. *Graham v. Connor,* 490 U.S. 386, 395 (1989). Fourth Amendment reasonableness is an objective standard— focusing neither on the officers' particular motivations nor on the arrestee's subjective

perception of the intrusion, but on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397.

The Fourth Amendment "does not require [police] to use the least intrusive means . . ., only reasonable ones." *Marquez v. City of Albuquerque,* 399 F.3d 1216, 1222 (10th Cir. 2005) (citation omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham,* 490 U.S. at 396 (citation and quotation marks omitted). This "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "Though the Fourth Amendment's reasonableness inquiry notoriously eludes easy formula or bright line rules," there are "three, non-exclusive factors relevant to [an] excessive force inquiry: [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Fisher*, 584 F.3d at 894 (internal quotation marks removed).

Officer Knab argues that, in the context of a pursuit following an armed robbery, it was reasonable to command Zorro to attack:

> The Plaintiff's primary argument as to why Officer Knab's actions were unreasonable was the fact that the Plaintiff was found to be unarmed at the time of his apprehension and arrest. Plaintiff, however, fails to address the undisputed facts that the Plaintiff was involved in an armed robbery; attempted to evade police in a vehicle; attempted to evade police on foot; traveled approximately one mile on foot in his attempt to evade by flight; did

> nothing to communicate or inform officers that he was no longer armed; and posed a direct threat to the responding officers and public at large. . . . Simply, considering the totality of the circumstances, Officer Knab was justified and acted reasonably in releasing Zorro in order to subdue and arrest Plaintiff.

(Docket No. 161, pp. 3–4; *see also* Docket No. 148-1, p.12.) All of these are good points—but conspicuously absent is any description of the actual scene in front of Officer Knab when he gave Zorro the command to attack. On the summary-judgment record before the Court, Mr. Savannah was lying on the ground—face down and arms extended—complying with the orders given to him by Officer Collins.[1] Further, Officer Knab had sufficient time to take the scene in. He testified in his deposition that he kept his eyes on the scene, and it is undisputed that he had time to re-call Zorro after the dog moved away from him—*twice*. It follows that Officer Knab had sufficient time to recognize that Mr. Savannah had surrendered and was cooperating with Officer Collins.

The argument Officer Knab makes, then, is that a police officer acts objectively reasonably, as a matter of law, when that officer orders a police dog to attack a suspect who is lying prone and complying with police orders—simply because moments earlier

---

[1] The scene in front of Officer Knab is a disputed question of fact. Mr. Savannah attests that he fully complied with the orders given to him and that he was laying face-down with his arms extended when the dog attacked. Both Officer Knab and Officer Collins—as well the contemporaneous police records—suggest that Mr. Savannah was on the ground but not on his stomach, and not with his hands overhead or even necessarily visible. It is possible that the Court might have viewed the evidence as so lopsided that no reasonable jury could have believed Mr. Savannah's account. But the Court need not undertake that analysis—because Officer Knab has conceded the point. (*See* Docket No. 148-1, pp. 6, 11 (not taking position on this question of fact); p.12 (arguing that the dispute is immaterial).) For purposes of summary judgment, Officer Knab has chosen to concede the genuineness of the dispute, and to argue only that the dispute is not material. *See* Fed. R. Civ. P. 56(a) ("genuine dispute of any material fact").

the suspect was fleeing from an armed robbery.   The Court cannot agree.   Rather, the complete *Graham* analysis must be applied.   Looking to those factors—"[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight," *Fisher*, 584 F.3d at 894—the Court sees only the first as plainly weighing in Officer Knab's favor.   The second and third factors both weigh in Mr. Savannah's favor, based on facts as they appear on summary judgment.   The reasonableness of Officer Knab's conduct will need to be decided by a jury.

### B.   Clearly Established Precedent

The next question is whether the right at issue was clearly established at the time of the alleged unlawful incident.   This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."   *Saucier v. Katz,* 533 U.S. 194, 201 (2001).   For a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."   *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992).   And while *Graham* "clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness[,] . . . that is not enough." *Saucier,* 533 U.S. at 201–02.   The right violated must be clearly established "in a more particularized, and hence more relevant sense: The contours of the right must be

11

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202.

As the Tenth Circuit has noted, "the analysis of an excessive-force claim is necessarily fact-specific, and thus prior cases do not need to involve all of the same factual circumstances or factors in order for an excessive force violation to be clearly established." *Aldaba v. Pickens*, 777 F.3d 1148, 1159 (10th Cir. 2015). Rather, the Court must "use a sliding scale in which the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* (internal quotation marks and alteration omitted).

Applying these standards, there is no doubt that the right at issue was clearly established at the time of Mr. Savannah's arrest. In an analogous context, the Tenth Circuit held in 2001 that:

> Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use.

*Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1193 (10th Cir. 2001). Likewise, it is established beyond debate that *any* use of force that comes after a suspect is subdued is unreasonable. *Grass*, 322 F. App'x at 590. Finally, it is clearly established (in the Eleventh Circuit) that deploying a police dog on a suspect who is subdued and compliant is unreasonable:

> When the police discovered Plaintiff, he submitted immediately to the police. When ordered by Defendant Wheeler to get down on the ground, Plaintiff complied. There was no confusion. Plaintiff did not pose a threat

> of bodily harm to the officers or to anyone else. And, he was not attempting to flee or to resist arrest. On Plaintiff's version of the facts, which we must accept, Defendant Wheeler ordered and allowed his dog to attack and bite Plaintiff; threatened to kill Plaintiff when Plaintiff kicked the dog in an effort to resist the unprovoked attack; and let the dog attack Plaintiff for at least two minutes. Considering these facts, no particularized preexisting case law was necessary for it to be clearly established that what Defendant Wheeler did violated Plaintiff's constitutional right to be free from the excessive use of force. No reasonable police officer could believe that this force was permissible given these straightforward circumstances.

*Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000).

The facts of this case are less egregious than those of *Priester*, and *Priester* is out-of-circuit precedent. But nonetheless, the idea that one cannot apply unneeded force[2] to a suspect who is already effectively subdued and compliant is well-established to the point of being obvious.

## Recommendation

For the above reasons, it is hereby RECOMMENDED that Defendant's Motion for Summary Judgment (Docket No. 148) be DENIED.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District**

---

[2] Further, the record before the Court reveals no distinctions in Zorro's training as to the degree of attack: whether, for example, Zorro was trained to subdue as opposed to disable or maim. *See, e.g.*, *Thomson v. Salt Lake County*, 584 F.3d 1304, 1315–17 (10th Cir. 2009) (differentiating between bite-and-hold force and deadly force by police dogs). The record here shows only that Zorro was given the command to "attack." (Docket No. 148-3 ¶ 6(h) & p.4.) There is no record from which for the Court could infer that Zorro's use of force was limited to a degree reasonably necessary for the situation.

13

**Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions, <u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996)**.

Dated:  June 11, 2015             <u>*/s/ Michael J. Watanabe*</u>
        Denver, Colorado           Michael J. Watanabe
                                          United States Magistrate Judge